UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

EMILY E. BOLTON,

     Plaintiff,

v.                                Case No.:  6:20-cv-1900-DNF

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## **OPINION AND ORDER**

Plaintiff Emily E. Bolton seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits and for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.  Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.  Social Security Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v.*

*Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment,

then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

## C.    Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits and for supplemental security income benefits on October 4, 2018, alleging disability beginning October 8, 2017. (Tr. 80, 81, 203-15). The applications were denied initially on November 21, 2018, and upon reconsideration on February 25, 2019. (Tr. 80, 81, 110, 111). Plaintiff requested a hearing, and on November 13, 2019, a hearing was held before Administrative Law Judge Jeffrey A. Ferguson. (Tr. 36-58). On March 2, 2020, the ALJ entered a decision finding Plaintiff not under a disability from October 8, 2017, through the date of the decision. (Tr. 17-29).

Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on September 15, 2020. (Tr. 1-6). Plaintiff initiated the instant action by Complaint (Doc. 1) filed on October 15, 2020, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 25).

## D.    Summary of ALJ's Decision

In this matter, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018. (Tr. 19). At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity from January through March 2019. (Tr. 19). The ALJ also found that there had been a continuous 12-month period during which Plaintiff did not engage in

substantial gainful activity. (Tr. 20). As a result, the ALJ's findings address the period Plaintiff did not engage in substantial gainful employment. (Tr. 20).

At step two, the ALJ found that Plaintiff had the following severe impairments: "relapsing, remitting multiple sclerosis; and headaches." (Tr. 20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b), except this individual can frequently push and pull with her left non-dominant upper extremity; she can frequently operate foot controls with her left lower extremity; she can frequently climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can frequently balance, stoop, kneel, crouch and crawl; she can never work in loud or very loud environments; she can frequently reach in all directions with her left non-dominant upper extremity; she can frequently handle and finger with her bilateral upper extremities; she must avoid concentrated exposure to extreme heat; and must avoid all exposure to work place hazards such as moving machinery, moving mechanical parts and unprotected heights.

(Tr. 23).

The ALJ found Plaintiff had no past relevant work. (Tr. 28). At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age (23 on the alleged onset date), education (at least high school education), work experience, and RFC, there are jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 28). Specifically, the ALJ found that Plaintiff could perform such occupations as:

(1)  cashier II, DOT 211.462-010, light, unskilled, SVP 2

(2)  ticket seller, DOT 211.467-030, light, unskilled SVP 2

(3)  file clerk, DOT 206.367-014, light unskilled, SVP 2

(Tr. 29). The ALJ concluded that Plaintiff had not been under a disability from October 8, 2017, through the date of the decision. (Tr. 29).

## II.    Analysis

On appeal, Plaintiff raises the following two issues: (1) whether the ALJ properly considered the medical opinions of record based on an adequate rationale and substantial evidence when determining a residual functional capacity for light work; and (2) whether the Appeals Council properly rejected the additional evidence submitted to it. (Doc. 32, p. 15, 40).

**A.** **Whether the ALJ properly considered the medical opinions of record based on an adequate rationale and substantial evidence when determining a residual functional capacity for light work**

Plaintiff argues that the RFC limiting her to light work conflicts with the opinion of treating neurologist Matthew Schindler, M.D. (Doc. 32, p. 15). Plaintiff claims that Dr. Schindler found Plaintiff more limited. (Doc. 32, p. 15). The Commissioner argues substantial evidence supports the ALJ's finding that Dr. Schindler's opinion was unpersuasive. (Doc. 32, p. 36).

The regulations for disability cases filed after March 27, 2017 – such as this one – changed and an ALJ no longer defers or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a), 20 C.F.R. § 416.920c(a). Thus, an ALJ no longer uses the term "treating source" and does not defer or give specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020) (citing 20 C.F.R. § 404.1520c(a)).

Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other

evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(a)-(c); 20 C.F.R. § 404.920c(a)-(c). An ALJ may but is not required to explain how he considers factors other than supportability and consistency, unless two or more opinions are equally persuasive on the same issue. 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* For consistency, the revised rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.*

The new regulations also differentiate between medical opinions and "other medical evidence." 20 C.F.R. § 404.1513(a)(2)-(3). "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities listed in paragraphs (a)(2)(i) through (iv). 20 C.F.R. § 404.1513(a)(2). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the

nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. 404.1513(a)(3).

Throughout her argument, Plaintiff contends the ALJ erred in not affording proper "weight" to treating physician Dr. Schindler's opinion. (Doc. 32, p. 15-18). In support of this argument, Plaintiff cites legal authority decided before the revised regulations. (Doc. 32, p. 15-18). But under the revised regulations, an ALJ need not assign specific evidentiary weight to medical opinions. 20 C.F.R. § 404.1520c; 20 C.F.R. 416.920c. "'[N]ew regulations at variance with prior judicial precedents are upheld unless they exceed the Secretary's authority or are arbitrary and capricious." *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *4 (M.D. Fla. Sept. 30, 2020) (quoting *Satellite Broad. and Commc'ns Ass'n of America v. Oman*, 17 F.3d 344, 348 n.8 (11th Cir. 1994) (cleaned up)). Plaintiff does not argue that the revised regulations are arbitrary and capricious and therefore the ALJ was not required to assign weight to Dr. Schindler's opinion under the revised regulations. *Torres*, 2020 WL 5810273, at *4.

With this standard in mind, the Court turns to whether the ALJ erred in finding Dr. Schindler's opinion unpersuasive. The Court finds the ALJ did not.

Dr. Schindler submitted a Multiple Sclerosis Medical Source Statement on September 4, 2019. (Tr. 537-540).[1]  In this form, Dr. Schindler determined it covered from October 3, 2017 through the date of the form. (Tr. 537). The form confirmed that Plaintiff has Multiple Sclerosis ("MS") and determined this diagnosis upon review of MRI scans with and without contrast of the brain, cervical spine, and thoracic spine. (Tr. 537). He identified the following symptoms and signs: chronic fatigue, sensitivity to heat, balance problems, poor coordination, paresthesia, pain, numbness, weakness, muscle spasticity, muscle fatigue of limb, vertigo, other vision disturbance, and headaches/migraines. (Tr. 537). He found Plaintiff's impairments would last or could be expected to last at least twelve months. (Tr. 537).

Dr. Schindler further found Plaintiff had significant and persistent disorganization of motor function in two extremities, which resulted in sustained disturbance of gross and dexterous movement or gait and station. (Tr. 537). In support, he explained that Plaintiff reported difficulty with activities like chopping food. (Tr. 537). Dr. Schindler also found Plaintiff had reproducible fatigue of motor function with substantial muscle weakness on repetitive activity. (Tr. 537). He described the muscle weakness as "headaches leave patient dizzy, feeling weak and

---

[1] The ALJ noted that the Multiple Sclerosis Medical Source Statement was not signed by Dr. Schindler. (Tr. 27). The ALJ found it was signed by Caitlin Pileggi, a Certified Registered Nurse Practitioner (CRNP). (Tr. 27). While it is clear the form was not signed by Dr. Schindler, the Court cannot confirm that it was Ms. Pileggi who signed the form and it may have been another certified registered nurse practitioner. (Tr. 540). Because the parties did object to the form, the Court will attribute the findings to Dr. Schindler.

fatigued." (Tr. 538). He found exacerbations of MS symptoms "may occur twice a month and vary in length." (Tr. 538). As a result of these impairments, Dr. Schindler estimated that if placed in a competitive work situation, Plaintiff's functional limitations would be: walking 5-10 city blocks; sitting for 30 minutes; standing for 1 hour; sitting and standing/walking for about 2 hours total in an 8-hour day; needing to be able to shift positions at will from sitting, standing, or walking; needing 1-2 unscheduled breaks per day for 10-20 minutes caused by chronic fatigue and pain from migraine headaches; elevating of legs for 5-10% of the day due to fatigue; needing no assistive devices; lifting and carrying occasionally less than 10 to 20 pounds; rarely twisting; and frequently stooping and crouching/squatting. (Tr. 539).

Related to hands, fingers, and arms, Dr. Schindler found Plaintiff able to use them 50% in an 8-hour workday. (Tr. 539). He also found Plaintiff would be off task 25% or more per day, finding "patient states that some days she is ok but other days she needs to leave work due to headaches." (Tr. 540). He also found Plaintiff capable of low stress work and will have "good days" and "bad days," which he estimated will cause Plaintiff to be absent from work more than four days per month. (Tr. 540). Another notation indicated Plaintiff was treated for headaches by Dr. Maritza Riacos-Mazo, a neurologist in Florida. (Tr. 540).

In the decision, the ALJ accurately summarized Dr. Schindler's medical source statement. (Tr. 27-28). Immediately following this summarization, the ALJ found:

> I find Dr. Schindler's opinion unpersuasive, since it is not fully support[ed] by the evidence described in the opinion itself, which although noting radiological findings supportive of an MS diagnosis, it does not contain objective medical findings, such as range of motion or neurological tests, that could support such a degree of limitation. Further, Dr. Schindler's opinion is inconsistent with Dr. Schindler's own progress notes, which repeatedly show unremarkable neurological findings, normal sensory examinations, normal reflexes, normal gait, mostly normal strength, normal memory, normal mood, and normal affect. (Exhibit 4F/10, 25, 33, 44). [2] Furthermore, Dr. Schindler's opinion is inconsistent with the overall medical record, since, although most recent medical testing has shown some left sided weakness, (Exhibit 8F/2), has also revealed mostly unremarkable neurological findings, normal gait and station, normal neurological findings, and normal walking tests (Exhibit 8F/5). Moreover, Dr. Schindler's opinion is inconsistent with the claimant's own admissions of a normal level of daily activities, which included ability to drive, shop, perform basic household chores, go out alone, and even work 5-hour shifts several time a week (Exhibit 5E and hearing testimony).

(Tr. 28).

Plaintiff argues that even though the ALJ evaluated the objective medical evidence and supporting explanations by Dr. Schindler, the ALJ's evaluation was not complete. (Doc. 32, p. 17). Plaintiff claims the ALJ ignored some bases on which

---

[2] In this finding, the ALJ cited records that were not from Dr. Schindler, but from other medical sources. This argument lends itself to the consistency of Dr. Schindler's opinion and not supportability. The Court will consider this statement accordingly.

Dr. Schindler reached his opinion in the medical source form, such as a physical examination, notations of Plaintiff's statements in support of limitations, and objective medical tests. (Doc. 32, p. 17- 20). Plaintiff also argues the ALJ ignored treatment notes with abnormal findings that supported Dr. Schindler's opinion. (Doc. 32, p. 18-20). Plaintiff further claims the ALJ did not consider Plaintiff's testimony that qualified her daily activities. (Doc. 32, p. 20-21). Finally, Plaintiff argues the ALJ failed to consider the length of Dr. Schindler's treating relationship and the frequency of examinations. (Doc. 32, p. 22).

The Commissioner contends substantial evidence supports the ALJ's finding that Dr. Schindler's opinion was unpersuasive. (Doc. 32, p. 36). In support, the Commissioner argues the ALJ assessed both the supportability and consistency of the opinion as required under the new regulations. (Doc. 32, p. 36).

Plaintiff first argues that the ALJ ignored some bases on which Dr. Schindler reached his opinions, such as a physical examination, Plaintiff's statements concerning her limitations, and objective medical tests. (Doc. 32, p. 17-20). Plaintiff contends that the medical source statement asked if Plaintiff had significant reproducible fatigue of motor function with substantial muscle weakness on repetitive activity based on a physical examination, and Dr. Schindler responded yes. (Doc. 32, p. 17). Plaintiff argues contrary to the ALJ's decision, the medical source statement contains an objective medical finding based on a physical examination.

(Doc. 32, p. 17). While the question in the form does speak of a physical examination, Dr. Schindler described "the degree of exercise and the severity of the resulting muscle weakness" as "headaches leave patient dizzy, feeling weak and fatigued." (Tr. 538). Plaintiff cites another note on the medical source statement that "patient states that some days she is ok but other days she needs to leave work due to headaches." (Doc. 32, p. 17; Tr. 540). These explanations do not rely on objective medical findings from a physical examination or otherwise, and instead rely on Plaintiff's subjective statements. Thus, the ALJ did not err in finding Dr. Schindler's opinion unsupported by objective medical findings.

Plaintiff next argues that the ALJ dismissed the MRI scans of the brain, cervical spine, and thoracic spine, when claiming Dr. Schindler's statement had no objective medical findings to support his opinion. (Doc. 32, p. 18). The ALJ specifically stated that Dr. Schindler noted radiological findings in support of an MS diagnosis. (Tr. 28). Dr. Schindler stated that he relied on these MRI scans to determine an MS diagnosis. (Tr. 537). He did not, however, refer to the scans again to support his later opinions as to Plaintiff's limitations.

Plaintiff then claims the ALJ ignored treatment notes with abnormal findings that supported Dr. Schindler's opinion. (Doc. 32, p. 18-20). Plaintiff cites an October 3, 2017 treatment note, which was her initial visit to the Multiple Sclerosis Clinic at Penn Medicine. (Doc. 32, p. 18). Plaintiff then cites a November 9, 2017 test and a

May 15, 2018 treatment note. (Doc. 32, p. 18-19). But the ALJ found Dr. Schindler's opinion unpersuasive because it conflicted with the repeatedly unremarkable neurological findings, including the most recent examination. (Tr. 28). Dr. Schindler evaluated Plaintiff apparently one time on December 6, 2018. (Tr. 515-530). At that visit, Dr. Schindler observed normal motor bulk and tone, normal coordination, and normal gait. (Tr. 522-23). In the decision, the ALJ also cited multiple medical record that generally found unremarkable neurological findings. (Tr. 25-26). The ALJ cited the most recent examination of September 9, 2019 by Gary Weiss, M.D. The ALJ acknowledged that Dr. Weiss found "Slight weakness Left side," upon examination, but also found Plaintiff's gait and station normal, motor strength normal and symmetric in all four extremities, and reflexes normal and symmetric. (Tr. 28, 542, 545). The ALJ supported his decision based on these objective examination findings, and these findings do not support Dr. Schindler's opinion as to Plaintiff's extreme limitations.

Plaintiff next argues that the ALJ erred in finding Dr. Schindler's opinion inconsistent with Plaintiff's own admissions of normal daily activities, including driving, shopping, performing basic household chores, going out alone, and even working 5-hour shifts several times a week. (Doc. 32, p. 20; Tr. 28). The ALJ noted that Plaintiff can perform all of her personal care activities, she cooks a complete meal, does laundry, cleans bathrooms, washes dishes, drives a car, goes out alone,

shops, manages her finances, enjoys writing reading, travelling, and watching television. (Tr. 22). The ALJ acknowledged that Plaintiff testified to limitations in daily activities, but the ALJ found these assertions could not be objectively verified. (Tr. 24). The ALJ found Plaintiff's pain and other subjective symptoms "are not of such frequency, intensity, or duration as to preclude all work activity. (Tr. 24). Indeed, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms not to be entirely consistent with the medical evidence and other evidence of record. (Tr. 24). While daily activities of short duration may not be inconsistent with limitations, here Plaintiff has not shown her daily activities were of a short duration. *See Jenkins v. Berryhill*, No. 8:17-cv-2499-T-CPT, 2019 WL 1417327, at *9 (M.D. Fla. Mar. 29, 2019) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)). Plus, Plaintiff testified that she worked as a cashier at TJ Maxx for about 15 hours per week, on five-hour shifts, sometimes four days in a row. (Tr. 20, 23, 41). The ALJ compared this work with Dr. Schindler's extreme limitations and found it inconsistent.

Lastly, Plaintiff contends the ALJ failed to consider the purpose of the treatment relationship and the extent of the treatment relationship between Plaintiff and Dr. Schindler. Under the new regulations, an ALJ must consider the supportability and consistency of a medical source's opinion. 20 C.F.R. § 404.1520(c((b)(2). These are the most important factors in determining

persuasiveness. *Torres v. Comm'r of Soc. Sec.*, No. 6:19-cv-1662-ORL-PDB, 2020 WL 5810273, at *2 (M.D. Fla. Sept. 30, 2020). An ALJ may, "but is not required to, explain in the decision how [he] considered the other factors unless [he] finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical." *Id.* (citing 20 C.F.R. §404.1520c(b)(2), (3). Here, the ALJ did not so find and was therefore not required to consider the other factors.

In sum, the Court determines the ALJ's finding that Dr. Schindler's opinion was unpersuasive is supported by substantial evidence. The ALJ articulated specific reasons showing that Dr. Schindler's opinion was not supported by his one-time evaluation and objective medical evidence, and Dr. Schindler's opinion was not consistent with the medical evidence and other evidence of record.

**B.    Whether the Appeals Council properly rejected the additional evidence submitted to it.**

Plaintiff submitted a letter from treating neurologist Dr. Schindler to the Appeals Council. (Doc. 32, p. 40-41; Tr. 8). The Appeals Council acknowledged the submission and found that "this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). Plaintiff argues the Appeal Council erred and there is a reasonable probability that this letter could change the administrative result. (Doc. 32, p. 41). The Commissioner claims that Dr.

Schindler's letter does not undermine the substantial evidence supporting the ALJ's decision. (Doc. 32, p. 41-42).

"'With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process,' including before the Appeals Council." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015) (quoting *Ingram v. Comm'r of Soc., Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir.2007)). Under new regulations effective in 2017, the Appeals Council will review a case when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 416.1470(a)(5). The new regulation added an additional requirement that the Appeals Council "will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 416.1435 because" and then lists reasons. 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b). New evidence is chronologically relevant if it relates to the period on or before the date of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) . The Appeals Council need not give a detailed explanation or further address each piece of new evidence individually. *Hargress*, 883 F.3d at 1309 (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014)).

If the ALJ's decision is contrary to the weight of the evidence – including the new evidence – then the Appeals Council must grant the petition for review. *Id.*

Dr. Schindler's letter dated May 28, 2020, is new because it is dated after the ALJ's March 2, 2020 decision, and is relevant because it relates to the period on or before the decision. The only question is whether a reasonable probability exists that this May 28, 2020 letter would change the administrative outcome. The Court finds it would not.

Dr. Schindler's letter notes that he began providing care to Plaintiff on December 6, 2018. (Tr. 8). He states her diagnosis. (Tr. 8). He then explains in general terms MS and the effects it may have on patients, including Plaintiff. Dr. Schindler concludes:

> For Ms. Bolton, her limitations may not be evident every day and fluctuate depending on a wide-number of factors. She endorses fatigability with inability to sustain some functions after a period of time. This is a very common complaint amongst patients with MS. It is also common that certain days she may endure only 10 minutes of work and other days she can maintain for 8 hours. Neither her, nor her doctors can predict when good, or bad days will occur.

(Tr. 8). Dr. Schindler's letter contains largely speculation as to what may or may not occur. As discussed above, the ALJ considered the record as a whole and thoroughly considered all of the medical and other evidence. Based on the speculative nature of this letter, the Court determines that the Appeals Council's decision finding this

evidence did not show a reasonable probability that it would change the outcome of the decision is supported by substantial evidence.

## III.    Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on November 10, 2021.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

- 21 -